UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DONALD LEWIS LAW,<br><br>               Plaintiff,<br><br>   v.<br><br>CITY OF POST FALLS, CHIEF OF POLICE CLIFFORD T. HAYES, OFFICER HOPE TUCKER, SGT. PATRICK LEONARD, SGT. MARK BRANTL, OFFICER JOSH PAYTON and OFFICER MARK GOODWIN,<br><br>               Defendants. | Case No. 2:09-cv-504-CWD<br><br>**MEMORANDUM DECISION AND ORDER**<br><br>**RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DKT. 16)** |

## INTRODUCTION

Plaintiff Donald Lewis Law instituted this civil rights action under 42 U.S.C. §
1983 against the City of Post Falls, Post Falls Chief of Police Clifford Hayes, and Post
Falls Police Officers Hope Tucker, Patrick Leonard, Mark Brantl, Josh Payton, and Mark
Goodwin, claiming that the Officers' use of a taser during his arrest and overly tight
handcuffs constituted excessive force under the Fourth Amendment. (Dkt. 1.) Plaintiff

also claims that he was wrongfully arrested, maliciously prosecuted, and that the City of Post Falls and the Chief of Police should be held liable for instituting unconstitutional policies and for failing to adequately train the City's law enforcement officers. Defendants move for summary judgment, arguing that, based on the undisputed facts before the Court, they are entitled to judgment as a matter of law. (Dkt. 16.)

The Court heard arguments on Defendants' motion on December 15, 2010. Based upon the parties' briefing, counsels' arguments, and the materials submitted on the motion, for the reasons more fully discussed below and under recent Ninth Circuit precedent, the Court will grant summary judgment dismissal in favor of Defendants.

## FACTS

The following facts are undisputed or, when disputed, taken in the light most favorable to Donald Law, the Plaintiff and non-moving party. See *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (recognizing the district court's obligation to construe the record in the light most favorable to the non-moving party on motion for summary judgment).

Plaintiff is 75 years of age and suffers from impaired hearing as a result of exposure to "jet engine whine" while employed with the armed forces.

On June 27, 2009, Post Falls police officers Hope Tucker, Patrick Leonard, Mark Brantl, and Josh Payton were dispatched to the home of Donald and Betty Law in reference to a domestic dispute. Plaintiff's wife, Betty Law, called the police in response to a verbal altercation between her husband and Julie Pelllini (Plaintiff's daughter). At

the time of the incident, Julie Pellini ("Julie") and her husband Richard Pellini

("Richard") were residing at Plaintiff's house.

Concerning the incident, Plaintiff states in his affidavit that:

> On June 27, 2009, my daughter Julie Pellini, came to me
> while I was sitting outside on my deck. Julie began
> screaming at me as soon as she came outside. She was very
> angry that I had given my truck to my grandson, Michael
> Quindt. She came right up to where I was sitting in the chair,
> and was screaming at me with her face about six inches from
> my face. She physically blocked me from getting up out of
> the chair. She screamed loudly at me for 20 minutes. I told
> her to "stop" several times and told her to "go away" at least
> three times. She was screaming so loud that the neighbors 75
> yards away could hear her . . . . After this had gone on for at
> least 20 minutes, and after I had repeatedly requested that she
> stop, I finally slapped her once with an open hand to try to get
> her to move herself away.

Aff. of Donald Law, ¶ 5 (Dkt. 18-1.) Plaintiff further testifies in his affidavit that, when

Julie's husband Richard saw Plaintiff slap Julie, Richard "came charging out onto the

deck and was visibly angry and screaming." *Id*., at ¶ 7. Plaintiff states that he was afraid

of his daughter's husband, who allegedly has a violent criminal history. *Id*., at ¶¶ 6-7.

Plaintiff admits that in response to his son-in-law's aggression, Plaintiff "pulled out [his]

9 mm TZ75 pistol and pointed it at Richard Pellini." *Id*., at ¶ 7.

The Defendant Officers arrived at Plaintiff's residence and located Richard outside

the home. Aff. of Hope Tucker, ¶ 7 (Dkt. 16-5.) Richard informed the Officers that his

wife, Julie, and her father Donald Law had gotten into a verbal altercation and that Mr.

Law had punched Julie in the face several times. *Id*., at ¶ 8. Plaintiff denies punching his

daughter, but admits to slapping her in the face with an open hand. Richard also informed the Officers that Plaintiff had pointed a gun at both him and Julie. *Id.*, at ¶ 9. Richard told the Officers that Plaintiff was seated out back on the porch and had a small pistol hidden underneath his blanket or chair. *Id.* Sergeant Leonard remained outside with Richard, while Officers Brantl, Payton and Tucker entered the home. *Id.*, at ¶ 11.

The three officers located Plaintiff, who was sitting in a chair on the back porch. Officers Brantl and Payton remained outside with Plaintiff while Officer Tucker went inside to talk with Julie. Officer Tucker located Julie, who informed her that Plaintiff had punched her in the face and pointed a gun at her husband Richard. *Id.*, at ¶¶ 14-18. Officer Tucker observed Julie's face to be red around the jaw area. *Id.*, at ¶ 16. According to Officer Tucker, Julie told her that she was unsure whether her father remained in possession of the gun. *Id.*, at ¶ 19. Officer Tucker contacted Officers Brantl and Payton via radio and notified them that Plaintiff may still be in possession of a gun and that it may be located near or underneath Plaintiff's blanket. *Id.*, at ¶ 20.

Officer Brantl asked Plaintiff if he was still in possession of the gun, to which Plaintiff told the officers that he had taken the gun and put it in his bedroom. Aff. of Mark Brantl, ¶ 15 (Dkt. 16-10.) Officer Tucker returned to the porch area and informed Plaintiff that he was under arrest for aggravated assault and battery. Aff. of Hope Tucker, ¶ 24. As Officer Tucker approached the porch, she ordered Plaintiff to stand and place his hands behind his back. *Id.*, at ¶ 25. Plaintiff did not respond, claiming later that, because of his disability, he was unable to hear the Officer's order. Compl., at 2-3.

**MEMORANDUM DECISION AND ORDER - 4**

Plaintiff's wife came onto the porch and told Plaintiff that the officers wanted him to stand up. Aff. of Betty Law, ¶ 7 (Dkt. 18-2.) Mrs. Law states in her affidavit that "[i]t was clear to me that he could not hear the female police officer." *Id.* During the arrest, Officers Brantl and Payton each grabbed hold of Plaintiff's arms and advised him to place his hands behind his back. Aff. of Josh Payton, ¶ 18 (Dkt. 16-8.)

Plaintiff states in his affidavit that the Officers shoved his head into the chair, put their knee into his back and tried to handcuff him with his hands at shoulder level. Plaintiff yelled out "you are hurting me." Aff. of Donald Law, ¶ 10. Plaintiff claims that, due to mobility restrictions, he cannot bring his hands closer than about a foot together behind his back and, when the Officers were unsuccessful in their first attempt to handcuff Plaintiff, Plaintiff heard one of the officers say "get a double cuff." *Id.* At that point Plaintiff felt a severe burning pain in his back, which he later learned was a taser applied in "drive-stun" mode. Plaintiff denies that he resisted arrest in any way.

Plaintiff alleges that after the Officer applied the taser, Plaintiff passed out and the next thing he remembers is standing up in handcuffs and being searched. *Id.* Plaintiff repeatedly told the police that the handcuffs were cutting into his wrists and pleaded with them to loosen the cuffs. *Id.*, at ¶ 11. Plaintiff was placed in the patrol car with his handcuffs still on. While waiting in the patrol car, Plaintiff informed one of the officers of the pain in his wrists. Aff. of Donald Law, at ¶ 12. The officer loosened Plaintiff's safety belt and told him to adjust his hands to relieve the pressure, but told Plaintiff that he could not loosen the handcuffs. *Id.* During the ride to the police station, Officer

Tucker asked Plaintiff whether he needed to go to the hospital to which Plaintiff responded "No, I just need you to loosen the cuffs." *Id*., at ¶ 13. Plaintiff's request was ignored, and Plaintiff was taken to the police station where he was booked and the handcuffs were taken off. *Id*. After arriving at the police station and being put in a cell, Plaintiff requested medical assistance because his wrist was hurting and his leg was bleeding.

Plaintiff alleges that he suffered the following injuries as a result of the arrest: two four-inch gashes on his leg when the Officers shoved him into the chair; permanent severe nerve damage due to the officers placing his hands behind his back; permanent and severe numbing of the hands as a result of the overly tight handcuffing; and permanent injury to his spinal column. *Id*., at ¶ 11. Plaintiff further claims that the application of the taser physically affected his nervous system, causing his blood pressure to skyrocket at the time of the arrest, and that he continues to have high blood pressure as a result of the Officers' use of the taser. Compl., at ¶ 5. Plaintiff has not submitted any medical records substantiating his medical conditions or that they were caused by the actions of the Officers.

Defendants have submitted excerpts from Plaintiff's deposition testimony. (Dkt. 16-3.) In his deposition, Plaintiff testified that he suffered from high blood pressure prior to the arrest and that he had been previously prescribed medication for that condition. *Id*., at 78. Plaintiff has not received a medical opinion that the Officers' use of the taser caused, or amplified, his cardiovascular condition. *Id*., at 93. Rather, he attributes the

high blood pressure to the taser through information he gathered from the Internet. *Id*.

Plaintiff also states in his deposition that he has suffered back pain since approximately

1979, when he was working as a miner, *id*., at 89-90, and that he had previously suffered

an injury to his left wrist as a child in which he fell through a glass door and severed the

tendons in his wrist, *id*., at 46. Plaintiff has not received a medical opinion that he

suffered permanent injury to his wrist as a result of the handcuffing. *Id*., at 87.

Following his arrest, Plaintiff was charged with Aggravated Assault, Idaho Code §

18-905, and Battery, Idaho Code §§ 18-903. The state court judge determined that

probable cause existed to believe that Plaintiff had committed both of the charged crimes.

The charges, however, later were dismissed by motion of the prosecutor.

The Post Falls Police Department has adopted policies and procedures with regard

to the use of tasers. The policies are attached to the affidavit of Clifford Hayes (Dkt. 16-

4), and state the following:

> 309.1  PURPOSE AND SCOPE
>
> When properly applied in accordance with this Policy, the
> TASER device is considered a non-deadly control device
> which is intended to temporarily incapacitate a violent or
> potentially violent individual without causing serious injury.
>
> ....
>
> 309.2  POLICY
>
> Personnel who have completed training approved by this
> department may be issued a TASER for use during their
> current assignment . . . .

309.3  VERBAL AND VISUAL WARNINGS

Unless it would otherwise endanger officer safety or is impractical due to circumstances, a verbal announcement of the intended use of the TASER shall precede the application of a TASER . . . .

309.4 USE OF THE TASER

. . .

Authorized personnel may use the TASER when circumstances known to the individual officer at the time indicate that the application of the TASER is reasonable to subdue or control:

(a)         A violent or physically resisting subject, or
(b)         A potentially violent or physically resisting subject if:
        1.      The subject has verbally or physically demonstrated an intention to resist;
        2.      The officer has given the subject a verbal warning of the intended use of the TASER following by a reasonable opportuinity to voluntarily comply;
        3.      Other available options reasonably appear ineffective or would present a greater danger to the officer or subject.
(c)         Although not absolutely prohibited, officers should give additional consideration to the unique circumstances involved prior to applying the TASER to any of the following individuals:
        . . .
        2.      Individuals who are handcuffed or otherwise restrained.

        . . .

        4.      Passively resisting subjects.
        . . .

The TASER shall not be used to torture, psychologically

torment or inflict undue pain on any individual.

Aff. of Clifford T. Hayes, Ex. A (Dkt. 16-4.)

Based on the above facts, Plaintiff's Complaint alleges various constitutional violations under 42 U.S.C. § 1983, including: (1) wrongful arrest; (2) malicious prosecution; (3) excessive force in violation of the Forth Amendment; (4) cruel and unusual punishment under the Eighth Amendment; and (4) municipal liability for the City's implementation of a policy, or custom, that allegedly resulted in the violation of Plaintiff's civil rights. Compl., ¶¶ 14-19 (Dkt. 1.)

## SUMMARY JUDGMENT STANDARD

Defendants seek summary judgment on all of Plaintiff's claims. Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial burden of stating the basis for its motion and identifying those portions of the record demonstrating the absence of genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). "If the party moving for summary judgment meets its initial burden of identifying for the court those portions of the material on file that it believes demonstrates the absence of any genuine issues of material fact," the burden of production shifts and "the non moving party must set forth, by affidavit or as otherwise provided in Rule 56, 'specific facts showing that there is a genuine issue for trial.'" *T.W. Electrical Service, Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.

1987) (quoting Fed. R. Civ. P. 56(e)).

Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Moreover, as to the specific facts offered by the nonmoving party, the court does not weigh conflicting evidence, but draws all inferences in the light most favorable to the nonmoving party. *T.W. Electrical Service, Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). When confronted with a purely legal question, however, the court does not defer to the nonmoving party.

## DISCUSSION

### 1. *Wrongful Arrest*

The Fourth Amendment prohibits unreasonable seizures. U.S. Const. Amend. IV. Arrests made without a warrant are unreasonable, and therefore violate the Fourth Amendment, if conducted without probable cause. See *Beauregard v. Wingard*, 362 F.2d 901, 903 (9th Cir. 1966) ("where probable cause does exist civil rights are not violated by an arrest even though innocence may subsequently be established."). In other words, probable cause is a defense to claims of unlawful arrests. See *Palmer v. Sanderson*, 9 F.3d 1433, 1436 (9th Cir. 1993) ("Defendants are entitled to qualified immunity for [Plaintiff's] arrest if a reasonable officer could have believed that probable cause existed to [make the] arrest.") The issue here is whether the Officers had probable cause to arrest Plaintiff. For the reasons discussed below, the Court finds they did.

"Probable cause exists when the facts and circumstances within the officer's knowledge are sufficient to cause a reasonably prudent person to believe that a crime has been committed." *Brooks v. City of Seattle*, 599 F.3d 1018, 1023 (9th Cir. 2010) (quoting *Lassiter v. City of Bremerton*, 556 F.3d 1049, 1053 (9th Cir. 2009)).  In this case, the Officers were dispatched to Plaintiff's home on a call of domestic violence.  Upon arriving at Plaintiff's home, the Officers were informed by Richard Pellini that Plaintiff had pointed a gun at him and had struck Julie Pellini.  Julie also informed Officer Tucker that Plaintiff had hit her and pointed a gun at her and Richard.  Officer Tucker also observed redness on Julie's jaw area.  Furthermore, prior to the arrest, Plaintiff admitted to slapping Julie in the face and pointing a gun at Richard.  Under these circumstances, the Officers could reasonably believe that Plaintiff had committed aggravated assault and battery under Idaho law. See Idaho Code § 18-905 (defining aggravated assault as an intentional and unlawful threat by word or act to do violence to the person of another with a deadly weapon or instrument); see also, Idaho Code § 18-903 (defining battery as the actual, intentional and unlawful touching or striking of another person against the will of another).  Thus, probable cause existed and the arrest was reasonable.  Defendants are entitled to summary judgment on this issue.

**2.**     ***Malicious Prosecution***

Defendants also argue that they are entitled to judgment as a matter of law on Plaintiff's malicious prosecution claim.  To prevail on a § 1983 malicious prosecution claim, Plaintiff must show that the Defendants prosecuted him with malice and without

probable cause, and that they did so for the purpose of denying him equal protection or another specific constitutional right. *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1189 (9th Cir. 1995). The Ninth Circuit has stated that "probable cause is an absolute defense to malicious prosecution." *Lassiter*, 556 F.3d at 1054. "The mere fact a prosecution was unsuccessful does not mean it was not supported by probable cause." *Freeman*, 68 F.3d at 1189.

In this case, Plaintiff was charged with aggravated assault under Idaho Code § 18-905 and battery under Idaho Code § 18-903. The state court judge found probable cause existed for these charges. The case was later dismissed. For the same reasons discussed in the previous section, information existed that would lead a man of ordinary care and prudence to believe or entertain an honest and strong suspicion that Plaintiff had committed the crimes charged. Thus, because probable cause existed, Plaintiff's malicious prosecution claim fails as a matter of law.

**3.**     ***Excessive Force***

The United States Supreme Court has recognized that the right to employ "some degree of physical coercion or threat thereof" to effect an arrest accompanies to the right to make the arrest. *Graham v. Connor*, 490 U.S. 386, 396 (1989). The amount of force, however, must be reasonable. *Id.* Excessive force claims are analyzed under the Fourth Amendment's "objective reasonableness" standard. *Graham*, 490 U.S. at 388. "This inquiry 'requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental

interests at stake.'" *Brooks v. City of Seattle*, 599 F.3d 1018, 1025 (9th Cir. 2010) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

In determining whether law enforcement officers used excessive and, therefore, constitutionally unreasonable force in the course of an arrest, the United States Court of Appeals for the Ninth Circuit employs a three-step analysis. *Miller v. Clark County*, 340 F.3d 959 (9th Cir. 2003). "First, we assess the gravity of the particular intrusion on Fourth Amendment interests by evaluating the type and amount of force inflicted." *Id*., at 964. Second, the court assesses "the importance of the government interests at stake" by evaluating the factors set forth by the United States Supreme Court in *Graham v. Connor*, 490 U.S. 386 (1989). These factors include: (1) the severity of the crime at issue; (2) whether the suspect posed an immediate threat to the safety of the officers or others; and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight. *Graham*, 490 U.S. at 396. Third, the court must consider the totality of the circumstances and weigh the gravity of the intrusion against the government's interest to determine whether the force employed was constitutionally reasonable. *Miller*, 340 F.3d at 964; see also, *Franklin v. Foxworth*, 31 F.3d 873, 876 (9th Cir. 1994) (stating the "inquiry is not limited to the specific *Graham* factors, . . . [the court] must look to whatever specific factors may be appropriate in a particular case, whether or not listed in *Graham*, and then must consider 'whether the totality of the circumstances justifies a particular sort of seizure.'") (quoting *Graham*, 490 U.S. at 396).

When evaluating an excessive force claim, summary judgment is appropriate if the court "concludes, after resolving all factual disputes in favor of the plaintiff, that the officer's use of force was objectively reasonable under all circumstances." *Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1994). In *Graham*, the Supreme Court made clear that the reasonableness of the force used must be judged from the perspective of a reasonable officer on the scene, making allowances for the split-second judgments officers are required to make in "tense, uncertain, and rapidly-evolving" situations. 490 U.S. at 396-97. In other words, the court must evaluate an officer's actions "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.*, at 396. Officers are not required to use the least intrusive means available; they simply must act within the range of reasonable conduct. *Brooks*, 599 F.3d at 1025. "Determination of that reasonable range requires consideration of the totality of the circumstances." *Id.*

Plaintiff claims that the use of the taser and the application of overly-tight handcuffs constituted excessive force within the meaning of the Fourth Amendment.[1] For the reasons set forth below, although the force used during the course of Plaintiff's arrest

_____

[1] Plaintiff also claims that the actions taken by the Officers during the arrest constituted cruel and unusual punishment in violation of the Eighth Amendment. Compl., at ¶ 16. The United States Supreme Court has made clear that the Eighth Amendment's protections do not attach until after conviction. *Ingraham v. Wright*, 430 U.S. 651, 671, n. 40 (1977) ("the State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law."); see also, *Pierce v. Multnomah County*, 76 F.3d 1032, (9th Cir. 1996) ("the Eighth Amendment's prohibition against the malicious or sadistic use of force . . . does not apply until after conviction and sentence.") (citation and quotation marks omitted). Defendants are, therefore, entitled to summary judgment on Plaintiff's claim under the Eighth Amendment.

MEMORANDUM DECISION AND ORDER - 14

may not have been the least intrusive means available, the Court finds that the force used

was constitutionally reasonable under the totality of the circumstances. Defendants'

motion for summary judgment on Plaintiff's excessive force claims will be granted.[2]

## A.     *Use of the Taser in "Drive-Stun" Mode*

The excessive force analysis begins with an assessment of the quantum of force

used to effectuate the arrest. *Deorle*, 272 F.3d at 1279. The Court assesses the quantum

of force "by considering the type and amount of force inflicted." *Id*. (citation and

quotation marks omitted). As to the type and amount of force inflicted in this case,

Plaintiff directs the Court to *Davis v. City of Las Vegas*, 478 F.3d 1048 (9th Cir. 2007)

and *Deorle v. Rutherford*, 272 F.3d 1272 (9th Cir. 2001), both of which Plaintiff argues

present factually similar circumstances in which the Ninth Circuit found excessive force.

In *Davis*, the plaintiff was placed in handcuffs by a casino security guard and

placed in a holding room. A police officer arrived, patted down the plaintiff and asked to

see his wallet. Plaintiff refused to consent to a search, at which point the officer slammed

plaintiff headfirst into a wall multiple times, threw him to the floor and punched him so

hard he broke plaintiff's neck. The plaintiff in that case was handcuffed during the entire

altercation with the officer. The Ninth Circuit held that the force used was excessive.

---

[2] Defendants argue that they are entitled to qualified immunity and that Plaintiff's claims should therefore be barred on that ground. Because the Court concludes that no constitutional violation occurred, the Court need not address the issue of qualified immunity. See *Saucier v. Katz*, 533 U.S. 194, 201 (2001) (stating that the threshold question is whether "the facts alleged show the officer's conduct violated a constitutional right? . . . .  If no constitutional right would have been violated were the allegations established, there is no necessity for further inquires concerning qualified immunity").

*Davis*, 478 F.3d at 1057 ("Any reasonable officer . . . would have known, in light of the *Graham* factors . . . and our case law interpreting them, that swinging a handcuffed man into a wall head-first multiple times and then punching him in the face while he lay face-down on the ground, and breaking his neck as a result, was unnecessary and excessive.").

In *Deorle*, the officers deployed a lead-filled beanbag projectile on an emotionally disturbed suspect. The lead-filled beanbag was shot from thirty feet, hit the plaintiff in the face, and as a result of the impact of the projectile, plaintiff's left eye was knocked out and pieces of lead were lodged in the plaintiff's skull. The Ninth Circuit held that the amount of force used on an emotionally disturbed suspect whose conduct was comparable to disturbing the peace was excessive under the Forth Amendment. *Id*., at 1275. Plaintiff claims that the facts of *Deorle*, "are virtually indistinguishable" from the facts presented in this case. Pl.'s Brief in Opp., at 3 (Dkt. 18.)

Plaintiff's contention that the force used in the above two cases is factually similar or "virtually indistinguishable" to the force applied in this case is not supported by a comparison of the facts of the cases. Slamming a handcuffed suspect's head into a brick wall multiple times with the effect of breaking his neck (*Davis*), and shooting a lead-filled beanbag at a mentally disturbed suspect with the effect of dislodging the suspect's eye and doing damage to the suspect's skull (*Deorle*), are quite simply different in magnitude (or quantum of force) than what happened in this case, which can be characterized as roughly handcuffing Plaintiff and using a taser in "drive-stun"mode to effect the arrest.

Furthermore, the Ninth Circuit recently has conducted an in depth analysis in three separate cases–all issued in 2010–addressing the circumstances under which the use of a taser by law enforcement officers constitutes excessive force within the meaning of the Fourth Amendment. See *Brooks v. City of Seattle*, 599 F.3d 1018 (9th Cir. 2010); *Bryan v. MacPherson*, 608 F.3d 614 (9th Cir. 2010), superceded by 2010 WL 4925422, 2010 U.S. App. LEXIS 24437 (9th Cir. Cal., Nov. 30, 2010); *Mattos v. Agarano*, 590 F.3d 1082 (9th Cir. 2010), *vacated to be heard en banc*, 2010 U.S. App. LEXIS 20425 (9th Cir. Oct. 4, 2010).[3] While Defendants briefly address these cases in their briefing, Plaintiff, inexplicably, fails to address the cases.

For the purposes of the motion currently before the Court, three major points can be taken from the recent Ninth Circuit opinions concerning tasers: *first*, the use of a taser in "drive-stun" mode is very different from the use of a taser in "dart" mode (*Brooks*, 599 F.3d at 1027); *second*, the use of a taser in "dart" mode constitutes an intermediate quantum of force while the use of a taser in "drive-stun" mode constitutes less than intermediate force (*id.*); and *third*, that due to "the dearth of prior authority" concerning tasers, even where the force was found excessive, the officer was found to be entitled to qualified immunity "because th[e] principle was not clearly established [when the incident occurred]," *Bryan v. MacPherson*, __F.3d__, 2010 WL 4925422 (9th Cir. Nov. 30, 2010).

---

[3]  Because the Ninth Circuit recently vacated the opinion filed in *Mattos v. Agarano*, 590 F.3d 1082 (9th Cir. 2010), and ordered that the case be reheard en banc (2010 U.S. App. LEXIS 20425 (9th Cir. Oct. 4, 2010)), that case will not be discussed.

In *Bryan*, the plaintiff was pulled over for a seatbelt infraction. 2010 WL 4925422, at \*13.  Having already been pulled over once that day, the plaintiff quickly became visibly agitated during the second stop–hitting his steering wheel and yelling expletives to himself. *Id.*  Once the plaintiff had exited the car, wearing only his boxer shorts and tennis shoes, the plaintiff began "yelling gibberish and hitting his thighs." *Id.*  It was undisputed that the plaintiff did not verbally threaten the officer or attempt to flee and that the officer was standing twenty to twenty-five feet away. *Id.*  While the plaintiff's back was turned, and without any warning, the police officer discharged his taser in "dart" mode, embedding a barbed electrical probe into the plaintiff's arm. *Id.*  The electrical pulse immobilized plaintiff, causing him to lose all muscular control, whereupon he fell face first into the ground, fracturing four teeth and suffering facial contusions. *Id.*  The plaintiff then was arrested.  The plaintiff filed a civil rights action under § 1983 against the officer, the police department, the chief of police, and the city. *Id.*, at \*14.

The district court granted summary judgment to the city and the police department, but determined that the officer was not entitled to qualified immunity because "a reasonable jury could find that [the plaintiff] presented no immediate danger to [the officer] and no use of force was necessary." *Id.* (quotation marks omitted).  The Ninth Circuit reversed, agreeing with the district court that a jury could find the force used excessive, but further finding that the right asserted by the plaintiff was not "clearly established" for the purposes of qualified immunity and that the officer was, therefore, entitled to summary judgment. *Id.*, at \*23.

The Ninth Circuit began its analysis in *Bryan* by looking at the nature and quality of the force used against the plaintiff. The court focused on the operation and effects of the specific model of taser employed during the plaintiff's arrest. *Id*., at *15 (noting that the taser at issue in that case "uses compressed nitrogen to propel a pair of 'probes'–aluminum darts tipped with stainless steel barbs connected to the [taser gun] by insulated wires–toward the target at a rate of over 160 feet per second" and upon striking the person, "[t]he electrical impulse instantly overrides the victim's central nervous system, paralyzing the muscles throughout the body, rendering the target limp and helpless"). The court specifically noted that the "tasered person also experiences an excruciating pain that radiates throughout the body." *Id*. As indicated above, the taser caused the plaintiff in that case to loose all muscular control, fall face first into the pavement, and resulted in four shattered teeth and facial abrasions. *Id*. Furthermore, one of the barbed probes from the taser "lodged in [the plaintiff's] flesh, requiring hospitalization so that a doctor could remove the probe with a scalpel." *Id*. The court concluded that the particular model of taser used in that case, "and similar devices, when used in dart-mode constitute an intermediate, significant level of force that must be justified by the governmental interest involved." *Id*., at *16.

The court then analyzed the governmental interest at stake, evaluating each of the *Graham* factors, and concluded that the force used was unreasonable under the circumstances and therefore unconstitutional. *Id*., at *22. The court emphasized that the plaintiff "never attempted to flee"; the plaintiff had been stopped "for the most minor of

MEMORANDUM DECISION AND ORDER - 19

offenses"; "[h]e was clearly unarmed and was standing, without advancing in any direction, next to his vehicle"; and that he "was twenty feet away and did not physically confront the officer" prior to the officer's use of the taser. *Id.* Under these circumstances, the court of appeals concluded that "the intermediate level of force employed by [the officer] against Bryan was excessive in light of the governmental interests at stake." *Id.*

The court nonetheless held that the officer was entitled to qualified immunity. *Id.*, at \*23. The court stated:

> Based on the[] recent statements regarding the use of tasers, and the dearth of prior authority, we must conclude that a reasonable officer in Officer MacPherson's position could have made a reasonable mistake of law regarding the constitutionality of the taser use in the circumstances [the officer] confronted in July 2005. Accordingly, Officer MacPherson is entitled to qualified immunity.

*Id.*

In *Brooks*, the Ninth Circuit addressed the use of a taser in "drive-stun" mode. 599 F.3d at 1025. In that case, Ms. Brooks (a pregnant woman) was stopped for speeding in a school zone. 599 F.3d at 1020. She denied speeding and refused to sign a Notice of Infraction regarding the speeding violation. *Id.* Eventually two more officers arrived on the scene and attempted to get Ms. Brooks to sign the citation. When it became apparent that she would not sign, the officers attempted to extract her from the car. Ms. Brooks refused to leave the car, remaining in it with the ignition running and her door shut. *Id.*, at 1021. One of the officers then showed Ms. Brooks his taser, explaining that it would hurt if applied. *Id.* Ms. Brooks informed the officers that she was pregnant. *Id.* One of the

officers then employed a pain compliance technique, bringing Ms. Brook's left arm up behind her back, whereon Ms. Brooks stiffened her body and clutched the steering wheel in order to frustrate her removal from the car. *Id*. The officer then discharged the taser against Ms. Brooks's thigh causing her to scream and honk the car's horn. *Id*. "Within the next minute, Officer Jones tased her two more times, against her shoulder and neck, the latter being the only area of exposed skin. . . . The third tasing moved Ms. Brooks to the right, at which point [the officers] were able to extract her from the car through a combination of pushing and pulling." *Id*.

The Court of Appeals held that the application of the taser three times against a pregnant woman during a traffic stop *did not* constitute excessive force. *Id*., at 1030-31. The court specifically focused on the fact that the taser was used in "drive-stun" mode, stating, "[t]he use of the Taser in drive-stun mode is painful, certainly, but also temporary and localized, without incapacitating muscle contractions or significant lasting injury." *Id*., at 1027. The court also distinguished the use of the taser in "dart" mode that was found to be excessive in *Bryan*; "the use of the Taser in drive-stun mode–as opposed to dart mode–seems unlike the force used in *Bryan* or uses of force which this court has previously considered severe." *Id*. The court found that the use of the taser in drive-stun mode constituted a "less-than-intermediate use of force." *Id*., at 1030. Under the *Graham* factors, although the court recognized that the severity of the alleged crime was minimal, the court found it significant that probable cause existed for the arrest and that Ms. Brooks conceded that she was resisting arrest.

In this case, the taser was used in "drive-stun" mode. Under the Ninth Circuit's holding in *Brooks*, the use of a taser in drive-stun mode constitutes a "less-than-intermediate use of force." Having identified the quantum of force, the Court will now evaluate the governmental interest at stake under the factors set forth by the United States Supreme Court in *Graham v. Connor*.

### (1) Application of the *Graham* Factors

### (a) Severity of the Crime

The Court is required to take into consideration the severity of the crime under *Graham* in determining whether the force was excessive. *Brooks*, 599 F.3d at 1025. This is in recognition of the fact that more severe crimes may require a greater level of force to apprehend a subject. In this case, Plaintiff was arrested and charged with aggravated assault, Idaho Code § 18-905, and battery, Idaho Code § 18-903. Aggravated Assault is a felony and requires either the use of a deadly weapon or any assault likely to produce great bodily harm. Idaho Code § 18-905(a) and (b). The Court need not linger on this factor; as discussed above, probable cause existed, and the Officers had information–including Plaintiff's own admission–that he had slapped his daughter and brandished a gun at his daughter and her husband. Since one of the alleged crimes involved the use of a gun, it should be viewed as severe under the *Graham* factors–weighing in favor of the officers.

**(b)**      **Threat to Officers or Others**

The second *Graham* factor examines whether the Plaintiff posed an immediate threat to the safety of the officers and/or others. The Ninth Circuit views officers' safety as "the most important of the three factors." *Miller v. Clark*, 340 F.3d 959, 964 (9th Cir. 2003) (quoting *Chew v. Gates*, 27 F.3d 1432 (9th Cir. 1994)). However, "[a] simple statement by an officer that he fears for his safety or the safety of others is not enough; there must be objective factors to justify such a concern." *Deorle*, 272 F.3d at 1281.

In this case, the Officers arrived at Plaintiff's residence in response to a reported domestic dispute. Upon arriving at Plaintiff's house, the Officers received information that Plaintiff was on the back porch, that he possessed a hand gun, and that the gun may be concealed under Plaintiff's blanket or chair. The Officers were also informed that Plaintiff recently threatened his daughter and his daughter's husband with the gun. When the Officers located Plaintiff, he was seated on the back porch drinking a cup of coffee. The porch was approximately eight by ten feet in diameter, and has been described by the Officers as "a small, confined area" and "very cramped with all officers and Donald out on the porch." Aff. of Mark Brantl, at ¶ 11. Plaintiff himself admitted to the Officers that he had slapped his daughter and pointed the gun at his son-in-law. It is undisputed that Plaintiff told Officers Brantl and Payton that he had taken the gun inside the house and placed it in his bedroom dresser. Aff. of Mark Brantl, at ¶ 16. The whereabouts of the gun, however, was not verified prior to Plaintiff's arrest.

Plaintiff argues that the fact that he was completely complaint, had told the Officers that he did not have the gun, and that he was under the complete control of the Officers when he was tased, demonstrates that he did not pose a threat to the Officers. However, taking the facts in the light most favorable to the Plaintiff, which this Court must for purposes of summary judgment, the Court must also view the circumstances from the perspective of a reasonable officer on the scene. *Graham*, 490 U.S. at 396.

Even if Plaintiff intended to be completely compliant, a reasonable officer may not have seen it that way. Plaintiff did not initially respond when Officer Tucker asked him to get out of his chair and a reasonable officer would not have known that he had a hearing disability as alleged now by Plaintiff. Furthermore, when the Officers attempted to handcuff Plaintiff, his arms did not come together behind his back. Plaintiff states that he could not place his hands together behind his back due to mobility restrictions. Plaintiff's inability to bring his hands together, however, could have been reasonably construed at the time as resistance. Finally, at the time Plaintiff was being subdued–before he was fully handcuffed–he was in the vicinity of where the Officers could reasonably believe that the hand gun was located.

The Court concludes that a reasonable officer confronted with the above factual scenario reasonably could have perceived an immediate danger to herself and those around her. The reasonable belief that Plaintiff was near the gun, coupled with the confined space of the porch and the Officers' struggle to handcuff Plaintiff–even if Plaintiff was subjectively complying–weighs in favor of finding the force used was

reasonable under the circumstances.

### (c)     Resisting Arrest

Plaintiff admits that he did not initially respond to Officer Tucker's request that he get out of the chair (claiming he did not hear the request). Plaintiff also admits that he was unable to place his hands behind his back because of mobility issues. As discussed above, while Plaintiff may have been subjectively compliant, the officers reasonably could have taken the above conduct as resistance.

### (2)     Totality of the Circumstances

Probable cause existed to believe that Plaintiff had committed aggravated assault and was in possession of a hand gun at the time of the arrest. Under the first *Graham* factor, the severity of the crime weighs in favor of the Officers. The potential danger to the Officers or others (the second *Graham* factor) also weighs in favor of the Officers due to the reasonable belief that Plaintiff was in the vicinity of the hand-gun before being completely handcuffed. Even assuming Plaintiff's complete compliance, it is reasonable to believe that a person who allegedly slapped his adult daughter and threatened his son-in-law at gun-point before the Officers arrived could quickly become non-compliant and seek the hand gun that the Officers believed was under the Plaintiff's blanket or chair.

Finally, even if this Court were to rule that Plaintiff was entirely compliant, under the Ninth Circuit's holding in *Brooks*, this Court cannot find the use of the taser in "drive-stun" mode to be excessive. Put a slightly different way, if tasing a pregnant woman three times during a traffic stop and "extract[ing] her from the car through a combination

of pushing and pulling" does not constitute excessive force, then this Court cannot find the use of a taser in drive stun mode excessive where the suspected crimes at issue involved a gun and the Officers could have reasonably believed that the subject had access to the gun. Under the Ninth Circuit's holding in *Brooks*, this Court finds that the force used was not excessive, as a matter of law.

**B.** *Handcuffs*

Plaintiff alleges that, during the course of his arrest, the Officers used overly tight handcuffs resulting in permanent damage to his wrist and that the use of such force was unreasonable under the Fourth Amendment. Like Plaintiff's excessive force claim based on the Officers' application of the taser, in addressing Plaintiff's claim that the use of the handcuffs constituted excessive force, the Court must balance the nature and quality of the intrusion on Plaintiff's Fourth Amendment right to be free from unreasonable seizures against the countervailing governmental interests at stake. *Palmer v. Sanderson*, 9 F.3d 1433, 1436 (9th Cir. 1993) (citing *Tennessee v. Garner*, 471 U.S. 1 (1985)). For the reasons discussed below, viewing the record in the light most favorable to the Plaintiff, the Court finds that Defendants' use of force in this case was constitutionally reasonable under the totality of the circumstances. Defendants' motion for summary judgment will therefore be granted on this issue.

The Ninth Circuit has addressed excessive force claims involving handcuffs on several occasions. In *Palmer v. Sanderson*, 9 F.3d 1433 (9th Cir. 1993), the plaintiff, a 67-year-old man who had recently suffered a stroke and had mobility problems, was

pulled over on suspicion of driving while intoxicated. The stop occurred at approximately 3:30 in the morning and the record indicated that at the time of the stop, it was raining and the wind was blowing at around 40 knots. *Id*., at 1434. The officer administered two field sobriety tests, both of which were successfully completed and failed to confirm the officer's suspicion that the plaintiff was intoxicated. *Id*.

After growing tired of standing in the rain and taking sobriety tests, the plaintiff walked back to his car, telling the officer that he would sit there and answer the officer's questions. *Id*. The plaintiff also told the officer that he would accompany him to the police station to take a breath test. *Id*. The officer then allegedly jerked the plaintiff out of the car, pushed him against it, frisked him, handcuffed him, and pushed him into the back seat of the patrol car. *Id*. The plaintiff was cited for obstructing an officer, which was later dismissed. *Id*., at 1435. The plaintiff filed suit in federal court under § 1983, claiming, among other things, that he was arrested without probable cause and that the officer fastened the handcuffs so tightly around the plaintiff's wrist that they caused pain and left bruises lasting for several weeks. The district court denied the officer's motion for summary judgment.

The Ninth Circuit affirmed. The court held that, if the plaintiff's version of the facts was credited, "no reasonable officer could believe there was probable cause to arrest [the plaintiff]." *Id*., at 1437. The court also noted that the officer "has presented no evidence that would justify handcuffing [the plaintiff] so tightly that he suffered pain and bruises, or to justify his refusal to loosen the handcuffs after [the plaintiff] complained of

the pain." *Id.*, at 1436. In sum, the court held that under the totality of the circumstances–including the officer's failure to confirm that the crime originally suspected had actually been perpetrated; the fact that the plaintiff complied with two field sobriety tests; the plaintiff's age; the weather conditions; and the plaintiff's otherwise compliant behavior–if the plaintiff's evidence was credited, "no reasonable officer could believe that the abusive application of handcuffs was constitutional. *Id.*

Conversely, in *Arpin v. Santa Clara Valley Transportation Agency*, 261 F.3d 912 (9th Cir. 2001), the Ninth Circuit upheld the district court's grant of summary judgment in favor of law enforcement on a claim of excessive force relating to the use of handcuffs. In that case, the plaintiff, a 60-year-old Mexican-American woman, had an altercation with a bus driver when she attempted to board a public bus. *Id.*, at 918. When law enforcement arrived, the bus driver alleged that the plaintiff had touched him and filed a report for battery. *Id.* The plaintiff denied that the battery occurred. After the plaintiff refused to produce photo identification, one of the officers allegedly twisted the plaintiff's arm behind her with enough force to lift her off the ground, breaking her watch band. *Id.* As the officer attempted to handcuff the plaintiff, the plaintiff stiffened her arm causing the officer to use additional force. The plaintiff brought suit against the officer claiming excessive force. The district court granted summary judgment in favor of the officer on the excessive force claim.

The Ninth Circuit affirmed the dismissal of the excessive force claim. *Id.*, at 922. The Court of Appeals first noted that the district court had found that probable cause

existed to detain the plaintiff. *Id.*, at 921. The court next focused on whether the plaintiff had resisted arrest, stating: "[a]side from [the plaintiff's] conclusory statement that she 'did not resist arrest in any way,' [the plaintiff] does not refute [the officer's] report that she stiffened her arm and attempted to pull it away." *Id.*, at 922. The court further stated that the plaintiff's "conclusory allegations unsupported by factual data are insufficient to defeat the County Defendants' summary judgment motion." *Id.* The court then focused on the plaintiff's failure to produce any evidence of injury sustained from the handcuffs, stating: "[plaintiff's] claim of injury is equally unsupported as she does not provide any medical records to support her claim that she suffered injury as a result of being handcuffed." *Id.* Ultimately, the court held that "[b]ecuase [the plaintiff] failed to meet her burden of proof of providing specific facts to show that the force used was unreasonable or that she sustained actual injuries, the district court did not err in granting summary judgment to the County Defendants on [the plaintiff's] claim of unreasonable force." *Id.*

In this case, the Court is persuaded that under the Ninth Circuit case law addressing claims of excessive force involving handcuffs, and viewing the record in the light most favorable to Plaintiff, the Defendant Officers are entitled to summary judgment. This case presents a very different factual scenario than the one presented in *Palmer*, in which the Ninth Circuit found the excessive force claim appropriate for trial. First, unlike the facts in *Palmer*, in this case probable cause unquestionably existed to believe that Plaintiff committed aggravated assault and battery under Idaho law. Second,

at the time of the arrest in this case, allegations existed of serious crimes involving the use of a deadly weapon and the Officers could have reasonably believed that Plaintiff was still in possession of that weapon. Furthermore, like the plaintiff in *Arpin*, in this case Plaintiff has not produced any medical evidence in response to Defendants' motion for summary judgment that the handcuffing resulting in damage to his wrists or hands.

Looking at the *Graham* factors, given the severity of the crimes alleged, the reasonable perception that Plaintiff was not complying with the Officers' orders, and Plaintiff's failure to come forward with evidence that his alleged injuries were caused by the application of the handcuffs, the Court concludes that, under the totality of the circumstances, the application of the handcuffs in this case was not excessive. Plaintiff has failed to meet his burden of proof of providing specific facts to show that the force used was unreasonable or that he sustained actual injuries. The Defendant Officers are entitled to summary judgment on this issue.

**4.** *Municipal Liability*

Plaintiff seeks relief against the City of Post Falls, the Post Falls Police Department, and Chief of Police Clifford Hayes for implementing a policy that resulted in Plaintiff's injuries. Compl., at ¶ 18. The United States Supreme Court held in *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978), that "local governing bodies . . . can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy, statement, ordinance, regulation, or decisions officially adopted and

promulgated by that body's officers." *Id.*, at 690.

Where there is no constitutional violation by the officers, however, there can be no municipal liability. The Supreme Court has held that no principle "authorizes the award of damages against a municipal corporation when . . . the officer inflicted no constitutional harm." *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986). This rule applies regardless of the actual policies of the municipality. *Id.* ("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have authorized the use of constitutionally excessive force is quite beside the point.") (emphasis in original). Because the Court has concluded above that no constitutional violation occurred, the Motion will be granted as to the claims against the municipal Defendants.[4]

**5.      *Claim Against Officer Mark Goodwin***

Plaintiff names Officer Mark Goodwin as a defendant in his Complaint. Defendants submit that Officer Goodwin was not present during the arrest and detention and therefore could not have used excessive force in effectuating the arrest. Mem. In Supp. Of Summ. Jud., at 22 (Dkt. 16-1.) Plaintiff does not contest that Officer Goodwin was not present during the arrest. Plaintiff's claims against Officer Goodwin are therefore dismissed with prejudice.

---

[4] For the purposes of this holding, Chief of Police Hayes (in his official capacity), the City of Post Falls, and the Post Falls Police Department will be treated as one because all allegedly enforced a policy or custom that led to constitutional violations.

## ORDER

**NOW THEREFORE IT IS HEREBY ORDERED** that Defendants' Motion for

Summary Judgment (Dkt. 16) is **GRANTED**.

DATED: February 23, 2011



Honorable Candy W. Dale
Chief United States Magistrate Judge